## UNITED PORTO RICAN SUGAR CO. v. SALDANA.
### No. 2441.

Circuit Court of Appeals, First Circuit.
May 17, 1930.

Henry G. Molina, of San Juan, Porto Rico, for appellant.

O. B. Frazer, of San Juan, Porto Rico, for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This action was brought before the District Court of Humacao, Porto Rico, by Fernando del Toro Saldana against the Juncos Central Company (the United Porto Rican Sugar Company, its successor, being later substituted as defendant), under Act No. 43 of the Legislature of Porto Rico approved March 13, 1913, as amended by Act No. 11 approved November 14, 1917, in which among other things it was provided:

"Section 1. That an injunction for the retention or recovery of material possession of real property shall be granted on petition of the interested party provided he shows to the satisfaction of the court that he has been disturbed in his possession or tenancy of said property by acts showing intention of disturbing or depriving him of such possession, or when he has already been deprived of said possession or tenancy."

It also provided, section 2 (1) and (2), that the complaint shall set forth:

"(1). That the complainant was within the year preceding the filing of the complaint in the actual possession of the property described in said complaint if it is sought to recover it, and was and is in possession thereof. if it is sought to retain it.

"(2). That he has been disturbed or deprived of the said possession or tenancy. He shall also describe clearly the facts constituting the disturbance or deprivation and whether said acts were committed by the defendant or by some other person by order of the said defendant."

"Section 5. That the court shall render judgment without undue delay. Costs shall be taxed against the party against whom judgment is rendered."

In the complaint it was alleged that Saldana was the owner of the following described property:

"Rural: known as 'Lechuga,' situated within the municipality of Juncos, ward of Gurabo Abajo, with an area of 64½ cuerdas of land, bounding on the South with the public road leading to Naguabo; on the East and West with the Gurabo River, to the mouth of 'La Ceiba' brook; and on the North with lands of the Solitaria property."

It was also alleged that, on April 6, 1922, the plaintiff leased to the defendant the above property for a term of three and a half years from March 1, 1922; that at the expiration of the lease on August 31, 1925, the defendant refused to deliver possession; that thereupon the plaintiff brought suit for unlawful detainer and secured a judgment for the delivery of the property; that on December 21, 1925, the marshal of the district, in execution of this judgment, put the plaintiff in possession of the property; and that thereafter the defendant fenced off and took possession of a part of the farm above described and leased, said part being described as follows:

"Piece of property of triangular shape, composed of two hectares, 67 ares and 71 centiares, equivalent to 6.81 cuerdas of land, situated in the ward of Gurabo Abajo of Juncos, bounding on the North, at a single point, with the road leading from Juncos to Naguabo; on the East with the 'Lechuga' property of Don Fernando del Toro, of which property this parcel is a part, in conformity with the plan drawn by Don Armando Morales on July 16, 1921; on the South with the Gurabo River to the mouth of a brook known as 'La Ceiba'; and on the West with lands now belonging to Juncos Central and formerly to the 'Solitaria' property."

The prayer was for delivery of this triangular piece of property of 6.81 cuerdas.

The defendant in its answer to the complaint admitted the making of the lease, the judgment in the unlawful detainer action, and that the marshal put the plaintiff in possession of the land leased; but denied that the triangular piece of 6.81 cuerdas was a part of the leased land, and alleged that the defendant was the owner of the triangular piece.

The District Court found that the marshal, in the execution of the judgment in the

prior suit for unlawful detainer, put the plaintiff in possession of the Lechuga property in accordance with the boundaries contained in the writ; but that the plaintiff did not receive the material possession of the triangular strip, and entered judgment for the defendant. From this judgment the plaintiff appealed to the Supreme Court of Porto Rico, which reversed the judgment below and ordered delivery of possession of the triangular piece of land to the plaintiff, with costs. It is from this judgment that the present appeal is prosecuted.

In the Supreme Court it was found that 12 years prior to April 6, 1922, the plaintiff leased to the defendant three rural properties, one of which was Lechuga, which lease had expired; that, on April 6, 1922, the parties entered into a new lease of the same properties for a further term of three and a half years; and that in this lease it was stipulated:

"Eighth. The lessee corporation agrees that the limits fixed by the land surveyor Mr. Armando Morales, of the properties leased, shall suffer no variation; and to preserve in good condition the points determining same."

It was also found that according to the lease of April 6, "and in conformity with the plan to which it refers" (which plan the representatives of the parties identified at the time the lease was made by a certificate on its back), the Lechuga property had "the western extreme of its southern boundary in front of the place where the Ceiba brook flows into the Gurabo River"; that "the Gurabo River is the southern boundary of the whole property," which included the triangular strip; that the base of the triangle extended from the Ceiba brook "some meters to the east" and that the sides of the triangle met at a point, which was "the northwest boundary of the Lechuga property." It then stated that the question in issue was whether the plaintiff had had the actual or material possession of the Lechuga property within a year from the filing of the complaint for an injunction, no other question apparently being pressed.

In considering this question the court said it had no doubt that, according to the lease and the plan, the triangular piece in question formed a "part of the Lechuga property leased to the appellee, inasmuch as the western boundary of said portion [the triangular portion] is a straight line lying between the place where Ceiba brook flows into the Gurabo River and an undisputed point in the north," which line is also the western bounda-

ry of the Lechuga property; that the triangular piece "being located in the Lechuga property on the west, and it having been *shown* and *admitted* by the appellee in its answer to the complaint, that said property was delivered judicially to its owner in execution of the judgment in ejectment, it is unquestionable that its owner had the possession of the portion claimed (the triangular piece), even though the delivery * * * made by the judicial officer" was "according to the description" in the writ and not by actually pointing out the boundaries on the land.

It also ruled and found that, if the lessee remained in possession of the triangular piece while the marshal was executing the judgment in ejectment, the lessee's possession of it was the possession of the lessor, the plaintiff; and that, in either aspect, the plaintiff, the lessor, had the actual or material possession of the property within a year of the bringing of the present suit.

As on the evidence there was no dispute that the defendant, after the execution of the judgment and before the present suit was brought, went upon the property and built a fence throughout the length of the east line of the triangular piece, thereby depriving the plaintiff of its possession by annexing it to its own property on the west and claiming it as a part thereof; the Supreme Court assumed this to be the fact, without discussion, and, being of the opinion that the case was one coming within the provisions of the act of 1913, as amended in 1917, reversed the judgment of the District Court.

The errors assigned are that the Supreme Court erred in holding: (1) That on December 21, 1925, when the judgment of eviction was executed, or at any time within a year from the bringing of this suit, the plaintiff was in the possession of the triangular piece of land; (2) that the triangular piece of land formed a part of the "Lechuga"; (3) that the defendant admitted in its answer that the triangular piece was delivered to the plaintiff by the marshal in executing the judgment of eviction; (4) that it was immaterial whether the defendant remained in possession of the triangular piece when the Lechuga property was delivered to the plaintiff; (5) and (6) that under the term of the lease the triangular piece was a part of the Lechuga property, and the special proceeding by injunction involved in this case was proper; and (7) "in imposing costs on the defendant."

The first assignment is so interwoven with the second and third that they must be con-sidered together, for the second and third are but subsidiary to the first. It raises the same question considered at length by the Supreme Court of Porto Rico in its opinion. Its decision requires a construction of the terms of the lease in connection with the map, to which the lease refers, which map was identified at the time the lease was made by the indorsement thereon of a certificate signed by the representatives of the respective parties to the lease.

We have examined the lease, the map referred to therein, and the writ of execution in the action of eviction, in which the Lechuga property is described in the same words as in the lease, and are satisfied that the Supreme Court was right in holding that the Lechuga property, as described in the lease and in the writ of execution, includes the triangular piece of land, the possession of which is here in question; that the western boundary of the triangular piece is the western boundary of the Lechuga property; and that when the marshal, standing beside the property and in the presence of the respective parties to the lease and to the writ of execution, delivered possession of it by reading the description contained in the writ of execution and the lease, he thereby delivered possession of the Lechuga property to the plaintiff in its entirety, and as extending to Le Ceiba brook as its southwesterly corner boundary.

Furthermore, we are of the opinion that the statement recited in the return of the marshal on the execution writ in the eviction suit, wherein it says: "I put Mr. Jose Martinez Davila, agent of the plaintiff Mr. Fernando del Toro, in the physical possession of the properties hereinbefore mentioned," one of which was Lechuga, and that "Mr. Jose Martinez Davila took possession of said properties," is conclusive evidence of the fact therein recited as between the parties to the eviction suit and those claiming as privies, and that it was not open to the defendant in this suit, between the same parties, to question the fact recited—that the plaintiff was put in the physical possession of the Lechuga property. Angier v. Ash, 26 N. H. 99, 105; Messer v. Bailey, 31 N. H. 9, 18.

In Angier v. Ash, supra, it was said: "Between the parties to a suit, and those claiming as privies, and others, whose rights and liabilities are dependent upon the suit, as bail and indorsers, the return of the sheriff of matters material to be returned, is so far conclusive evidence that it cannot be contradicted, for the purpose of invalidating the

sheriff's proceedings, or defeating any right acquired under them."

The fact recited in the return that the plaintiff was put in the physical possession of the Lechuga property was unquestionably a material fact to be returned, and was not open to contradiction by the defendant.

The plaintiff having been put in possession of the Lechuga property by the marshal on December 21, 1925, less than a year before this special proceeding was brought (August 10, 1926), and as the description in the lease, and in the writ of execution in the ejectment suit, carried the Lechuga property to the Ceiba brook as its southwest corner boundary, we think the Supreme Court was clearly right in holding that the plaintiff was in the actual or material possession of the triangular piece constituting a part of the Lechuga property within a year prior to the bringing of this special proceeding; and as on the evidence no other conclusion could be reached than that subsequent to December 21, 1925, the defendant entered upon the Lechuga property, then in the possession of the plaintiff, and erected a fence beginning at a point on the Gurabo River 141.45 meters east from the point where the Ceiba brook enters that river and extended the fence across the Lechuga property to its undisputed northwest corner boundary, that the defendant, by so annexing the triangular piece to its own property, disturbed and deprived the plaintiff of its possession, within the meaning of section 2 (2) of the Act of March 13, 1913, as amended November 14, 1917.

In this situation it is apparent that the special proceeding provided for by the act of 1913, as amended in 1917, is applicable and that the Supreme Court did not err in so holding.

Section 5 of the Act of 1913, as amended in 1917, provides that "costs shall be taxed against the party against whom judgment is rendered."

The last assignment is: "The court erred in imposing the costs upon the defendant." The statute in terms authorized the imposition of costs upon the losing party. The defendant, however, here contends that the court was not authorized in awarding costs to include an attorney's fee. The record does not show that an attorney's fee has been included in the costs. The order at the close of the opinion of the Supreme Court is: "The judgment appealed from should be reversed and another judgment rendered sustaining the complaint, with costs to the plaintiff." It is evident that on this record the question whether an attorney's fee may be taxed as costs is not before us, and that as yet none has been taxed.

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellee.